*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
August 13, 2020

v

No. 347567
Kent Circuit Court
LC No. 00-004017-FC

CHAD EDWARD-JOHN MALESKI,

        Defendant-Appellant.

Before: SHAPIRO, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

In November 2000, a jury convicted defendant of first-degree murder, MCL 750.316(1)(b), unarmed robbery, MCL 750.530, carjacking, MCL 750.529a, and kidnapping, MCL 750.349.[1] The trial court sentenced defendant as a juvenile to life in prison without the possibility of parole for his felony-murder conviction, 10 to 15 years' imprisonment for his unarmed-robbery conviction, and to 25 to 50 years' imprisonment for his carjacking and kidnapping convictions. Defendant was 17 years old at the time he committed the offenses, and life without parole was the mandatory sentence for his felony-murder conviction. Following the United States Supreme Court's decision in *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), holding that mandatory sentences of life without parole for juvenile offenders are unconstitutional, the trial court resentenced defendant to 35 to 60 years' imprisonment for his felony-murder conviction. Defendant appeals as of right. We affirm.

## I. BACKGROUND

After the United States Supreme Court's decision in *Miller*, the Legislature enacted MCL 769.25a, which entitled a juvenile offender who was sentenced to mandatory life imprisonment without parole before *Miller* to be resentenced if it was determined that *Miller* applied retroactively. See MCL 769.25a(3), (4). In *Montgomery v Louisiana*, __ US ___, ___; 136 S Ct

---

[1] Defendant appealed his convictions as of right, and we affirmed. *People v Maleski*, unpublished per curiam opinion of the Court of Appeals, issued September 13, 2002 (Docket No. 234112).

718, 732; 193 L Ed 2d 599 (2016), the United States Supreme Court determined that *Miller* applied retroactively, triggering the application of MCL 769.25a. See MCL 769.25a(3). In this case, the prosecutor then filed a motion for resentencing requesting that the trial court impose a life sentence without parole pursuant to MCL 769.25a(4)(b).

Our prior opinion summarized the facts surrounding the crime as follows:

[D]efendant participated with Joshua Rogers, Mark Kopp and James Rivero in the beating, robbery, and carjacking perpetrated against the victim outside a bowling alley in the city of Grand Rapids. The victim, after being severely beaten, was stuffed into the trunk of his own car and driven to a remote location in Mecosta County, where he was repeatedly stabbed with scissors and left to die. Trial testimony also indicated that while the victim was likely beaten into a helpless condition in the bowling alley parking lot, he survived even the stab wounds but died from blunt force injuries to his abdomen and head after several hours without medical attention. Defendant, Kopp, and Rivero were apprehended the next morning after the police stopped Kopp for a traffic violation while he was driving the victim's car. [*People v Maleski*, unpublished per curiam opinion of the Court of Appeals, issued September 13, 2002 (Docket No. 234112), slip op 1.]

At a resentencing hearing, defendant testified that two of the other offenders stabbed the victim with scissors while defendant waited in the vehicle. Defendant also testified that, when police officers detained him, he immediately confessed and voluntarily led them to the victim's body. After hearing testimony from defendant and other witnesses, the trial court extensively considered the *Miller* factors[2] and determined that defendant was entitled to be sentenced to a term of years rather than life without parole.

The prosecutor asked the trial court to impose a 40-year minimum sentence for defendant's felony-murder conviction while defense counsel asked for a minimum sentence of 35 years, which

---

[2] The Michigan Supreme Court determined that the *Miller* factors include:

"[defendant's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and "the possibility of rehabilitation. . . ." [*People v Skinner*, 502 Mich 89, 104-105; 917 NW2d 292 (2018), reh den 503 Mich 854 (2018), quoting *Miller*, 567 US at 477-478 (alterations in original).]

was consistent with the sentence imposed upon one of the codefendants. The trial court sentenced defendant to 35 to 60 years' imprisonment, stating:

> As I said, I'm very familiar with the facts and circumstances of this case. We had a hearing that lasted, I believe, several hours. I placed an opinion on the record. It was probably at least a half hour long weighing all of *Miller's* factors, and I am incorporating those by reference into my sentence here. And I am cognizant of the—of the law that I am required to follow. . . .
>
> [The United States Supreme Court] determined that because the brain of children are [sic] not fully developed, specifically the frontal cortex, that that doesn't develop until—truly—into your 20s. That children are much more susceptible . . . to impulse, temper control,—that they can't control themselves as well as adults are.
>
> \* \* \*
>
> There are two things that stand out directly to me, is that when the defendant in this matter was tried, at some point during the course of the trial, he was offered a plea to plead to second[-]degree murder. Second[-]degree murder does not carry a maximum penalty of life without the possibility of parole. It would have been a term of years, which is where we are today.
>
> And the Prosecutor—and it's established through the records that they offered that plea with the approval of the family of the victim at that time. And as counsel has indicated here, that the records establish that the defendant's own mother counseled him against taking this, even though he had already confessed.
>
> The records would reflect that as soon as this incident occurred, he was arrested very shortly afterward. When he was—when the defendant was interviewed by police, he confessed. Not to take advantage of a plea bargain that's being offered to you during the course of a—of a trial, when you've already confessed, that—that explains, I think, some of the factors that they talk about in *Miller*, that juveniles can't appreciate risk. And can't—are too immature to sometimes make decisions.
>
> And—and certainly this was a heinous crime. There is—there's no justification. There was no excuse whatsoever for treating this man the way he was treated and killing this man and torturing him. By all accounts, he was an outstanding individual and a wonderful human being.
>
> But you have done two things that impress me, and I believe was probably the basis for allowing you to be offered a plea bargain. One, you had taken the police to where this man was left in the woods. Your family, evidently, had camped up near Morley, Michigan. This is where the—where the victim . . . was discarded, for lack of a better term. And you took the police up there. But for you doing that, the family may never have found the remains of this man. You're to be credited

for that.  Also, you took the police and showed them where other defendants were at the time.  So those are two things significant to this Court.

After viewing everything and looking at your record in prison and out of prison, the way you were raised and mistreated when you were younger, it is the sentence of this Court, sir, that you be committed to the Michigan Department of Corrections to serve a minimum of 35 years to a maximum of 60 years.

This appeal followed.

## II.  DISCUSSION

Defendant argues on appeal that the trial court abused its discretion by failing to adequately consider defendant's mitigating factors, resulting in an unreasonable and disproportionate sentence.  We disagree.

"This Court reviews sentencing decisions for an abuse of discretion."  *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018).  A trial court abuses its discretion when it imposes a sentence that falls outside the range of principled outcomes.  *Id*. at 133.

Under MCL 769.25a(4), the prosecutor was required file a motion for resentencing that requests a sentence of life without parole within 180 days after the Supreme Court's decision in *Montgomery* became final.  MCL 769.25a(4)(b).  Defendant admitted that the prosecutor filed a timely motion in this case.  After a timely motion is filed, the trial court must conduct a hearing "as provided in [MCL 769.25]."  *Id*.  Under MCL 769.25, the trial court must consider all of the *Miller* factors at a resentencing hearing "and may consider any other criteria relevant to its decision, including the individual's record while incarcerated."  MCL 769.25(6).  The trial court must also "specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed."  MCL 769.25(7).  The minimum sentence imposed upon a juvenile offender "shall be not less than 25 years or more than 40 years."  MCL 769.25(9).  The maximum sentence "shall be not less than 60 years[.]"  *Id*.

In this case, the trial court imposed a minimum 35-year sentence, as requested by defense counsel,[3] after it extensively considered and evaluated the relevant facts and circumstances.  It fully articulated its rationale for the sentence it selected.  Defendant conceded that the trial court considered all the *Miller* factors at resentencing.  Defendant recognizes that, "[i]n most respects, the [trial] court's consideration of [the *Miller*] factors was thoughtful."  Indeed, defendant merely argues that the trial court did not give enough consideration to the mitigating factors.  But this argument fails to recognize the wide latitude given to the trial court under the abuse of discretion standard.  Correctly applied, we acknowledge that there is a range of potential correct outcomes and that the "trial court's familiarity with the facts and its experience in sentencing" puts the trial court in the best position to evaluate defendant.  *Skinner*, 502 Mich at 134 (quotation marks omitted).  Although defendant would have weighed his aggravating and mitigating factors

---

[3] Defense counsel asked for a minimum sentence consistent with the one imposed on a codefendant who had been sentenced to a 35-year minimum term.

differently, this does not dictate that the trial court's analysis of those factors fell outside the range of principled and reasonable outcomes. See *id*. at 133.

In sum, the trial court thoroughly considered the relevant factors related to defendant's sentence, including each *Miller* factor as required under MCL 769.25, and fully articulated the reasons for the sentence it imposed. We cannot conclude that the trial court abused its discretion by imposing a sentence of 35 to 60 years' imprisonment for defendant's felony-murder conviction. See MCL 769.25(6), (7); *Skinner*, 502 Mich at 133-134. The trial court's selected minimum sentence was neither unreasonable nor disproportionate.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Anica Letica